UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

LENRAY HARRIS,

          Plaintiff,

    v.

UNITED STATES OF AMERICA,

          Defendant.

**DECISION AND ORDER**

1:16-CV-00247 EAW

## INTRODUCTION

Plaintiff Lenray Harris ("Plaintiff") commenced this action against the United States of America ("Defendant") on March 24, 2016, pursuant to the Federal Tort Claims Act ("FTCA"), as amended, 28 U.S.C. § 2671 *et seq*. and 28 U.S.C. § 1346(b)(1). (Dkt. 1). Plaintiff alleges emotional injuries from Defendant's disclosure that several of its nurses improperly administered insulin pens during the time period that Plaintiff received treatment from Defendant. (*Id.* at ¶¶ 11-26). Plaintiff maintains Defendant caused her to fear that she had contracted a bloodborne disease. (*Id.*). Nonetheless, Plaintiff has not contracted any such disease and there is no evidence that Plaintiff was exposed to any such disease.

Presently before the Court is Defendant's motion for summary judgment. (Dkt. 16). Because no reasonable jury could conclude that Defendant negligently caused Plaintiff emotional injuries, the Court grants summary judgment in favor of Defendant.

# BACKGROUND

## I.  Procedural Background

Prior to commencing the instant action, Plaintiff, a former service member of the National Guard, filed an administrative claim with the United States Department of Veterans Affairs ("VA") on August 5, 2014, alleging emotional damages arising from the negligence of United States government employees, agents, apparent agents, servants, or representatives practicing in the course and scope of their employment at the Buffalo Veterans Administration Medical Center.  (Dkt. 1-1 at 2).  On September 27, 2015, the VA issued a letter denying the claim.  (Dkt. 1-2 at 2-3).

On March 24, 2016, Plaintiff commenced the instant action pursuant to the FTCA. (Dkt. 1).  Defendant filed an answer to Plaintiff's complaint on July 25, 2016.  (Dkt. 4). Discovery in the matter closed on December 28, 2017.  (Dkt. 15).  On February 15, 2018, Defendant moved for summary judgment.  (Dkt. 16).  Plaintiff filed her opposition to the motion on March 22, 2018, (Dkt. 19), and Defendant replied in support of the motion on April 5, 2018.  (Dkt. 21).

## II.  Factual Background

### A. OIG Investigation

From 2012 to 2013, the VA Office of Inspector General ("OIG"), Office of Healthcare Inspections, investigated the use of insulin pens at the Buffalo Veterans Administration Medical Center located on Bailey Avenue in the City of Buffalo ("Buffalo VAMC").  (Dkt. 16-1 at ¶ 6).  OIG published a report on May 9, 2013, titled

"Inappropriate Use of Insulin Pens VA Western New York Healthcare System, Buffalo, New York." (Dkt. 1-4) (the "OIG Report").[1]

Over eighteen million people in the United States suffer from *Diabetes mellitus* (diabetes), and approximately a quarter of adults diagnosed with diabetes inject insulin to manage the disease. (*Id.* at 7). Before 2010, the Buffalo VAMC administered insulin to its patients using a multi-dose vial prepared by the hospital's pharmacy and labeled with the specific patient's name. (*Id.*).

In October 2010, the Buffalo VAMC changed its protocol and adopted the use of insulin pens on its inpatient units. (*Id.* at 13). Each insulin pen contains a pre-filled cartridge with 150 or 300 units of insulin and is designed for use on a single patient multiple times. (*Id.* at 7). The OIG Report found use of a pen on more than one patient could potentially expose patients to bloodborne diseases such as hepatitis B, hepatitis C, and the human immunodeficiency virus (HIV). (*Id.* at 8). Additionally, the United States Food and Drug Administration and Centers for Disease Control and Prevention both recommend that each patient have her own pen. (Dkt. 1-3 at 2). However, after reviewing the medical literature about insulin pens and various case studies, OIG found no documented cases of transmitting bloodborne pathogens related to the use of an insulin pen on multiple patients. (Dkt. 1-4 at 8-9).

---

[1]    Defendant argues that the OIG Report is inadmissible under Rules 402 and 403 of the Federal Rules of Evidence. (Dkt. 16-9 at 17-19). However, having found that Defendant is entitled to summary judgment for the reasons discussed below, the Court need not and does not reach this issue, and it has considered the OIG Report in connection with this motion.

The Buffalo VAMC stocked unlabeled pens in refrigerators of inpatient units, and when a patient had an order for insulin, the "nursing practice procedures instructed nurses to remove a pen from the refrigerator, apply a patient label, and place the pen in a patient-specific drawer" on the patient's medication cart. (*Id.* at 15). The Buffalo VAMC's nursing practice procedures also stated that an insulin pen is "for the individual patient it was ordered for," and that "[t]he pens are NOT to be shared." (*Id.*).

The OIG Report states that in October 2012, the Chief of Pharmacy at the Buffalo VAMC conducted a routine inspection and discovered six unlabeled insulin pens in the supply drawers of patient medication carts. (*Id.* at 12). In November 2012, the Buffalo VAMC launched an internal investigation concerning the potential improper use of insulin pens on patients. (*Id.* at 6). The Buffalo VAMC also notified the Veterans Health Administration ("VHA") Central Office officials about the misuse of the pens, which prompted Congressional inquiries and the investigation by OIG. (*Id.* at 6-7). OIG questioned thirty-seven Buffalo VAMC inpatient nurses about their use of the pens. Six of those nurses stated they used unlabeled insulin pens, and five of those six acknowledged using the unlabeled pens on multiple patients. (*Id.* at 17). The remaining 31 nurses reported that they labeled the insulin pens when they removed them from the refrigerator or that the pens they used already had labels with the patient's name. (*Id.*).

The Buffalo VAMC identified 716 patients as at-risk from possible misuse of the insulin pens, 542 of whom were still living. (*Id.* at 21). Of the 395 of these patients who ultimately received blood tests, "84 patients had at least one positive test on initial screening." (*Id.*). Of these 84 patients, 29 had results consistent with a hepatitis B

- 4 -

vaccination, 28 had results indicating infection prior to exposure to the insulin pens, two had false positive results, and seven had results that were indeterminate and required additional testing. (*Id.*). Eighteen of the patients had results indicating recent or past exposure to bloodborne pathogens. (*Id.*). However, OIG could not identify insulin pen exposure as the cause of any of these 18 positive blood tests because the "exposure could have occurred at almost any point in the patients' lives prior to testing," and the "patients had other risk factors for bloodborne pathogens besides insulin pens." (*Id.* at 21-22).

### B. Use of Insulin Pen on Plaintiff at the Buffalo VAMC

Plaintiff is a former service member of the National Guard. (Dkt. 1-1 at 2). She suffers from diabetes, which she treats with insulin. (Dkt. 16-1 at ¶ 41). In 1992, while serving in the National Guard, Plaintiff fell and injured her left knee. (*Id.* at ¶ 36).

Plaintiff had a full knee replacement at Buffalo General Hospital on August 8, 2012. (*Id.* at ¶ 37). After the surgery she developed a Methicillin-resistant Staphylococcus aureus infection. (*Id.* at ¶ 38). On September 24, 2012, she returned to Buffalo General for treatment. (*Id.*). Buffalo General then referred Plaintiff to the Buffalo VAMC for intravenous antibiotic treatment, and she was admitted to the Buffalo VAMC on September 27, 2012. (*Id.* at ¶ 39-40). Plaintiff remained in the Buffalo VAMC's care until October 1, 2012. (*Id.* at ¶ 40). While admitted to the Buffalo VAMC, Plaintiff was under orders to receive insulin from an insulin pen. (*Id.* at ¶ 41).

Plaintiff received three insulin pen injections from licensed practical nurses ("LPNs") during her stay at the Buffalo VAMC. (*Id.* at ¶ 42). These injections were administered to Plaintiff by LPNs Natasha Crockett, Donald E. Johnson and Julia A.

Garcia. (*Id.* at ¶ 43). Defendant has submitted declarations from each of these LPNs stating that when they used insulin pens in the fall of 2012, the pens "were always properly labeled with the patient's name in accordance with the hospital's nursing practice procedures." (Dkt. 16-4 at ¶ 4; Dkt. 16-5 at ¶ 4; Dkt. 16-6 at ¶ 4). Each LPN further states that he or she "always used the patient's individually labeled insulin pen that was stored in the patient's medication drawer," and that "[i]t was not [his or her] practice to use unlabeled insulin pens on patients" or "to use an insulin pen on more than one patient." (Dkt. 16-4 at ¶ 5; Dkt. 16-5 at ¶ 5; Dkt. 16-6 at ¶ 5). Plaintiff has no memory of whether the insulin pen the LPNs used on her during her stay with Defendant was labeled with her name. (Dkt. 16-8 at 11). The insulin pen is no longer available. (Dkt. 20 at 2).

On January 14, 2013, Defendant contacted Plaintiff to inform her about the potential bloodborne pathogen exposure during her recent stay with the Buffalo VAMC and offered to perform testing for hepatitis B, hepatitis C, and HIV. (Dkt. 16-1 at ¶ 48; Dkt. 1-3 at 2). Plaintiff underwent testing on or about February 19, 2013, and was advised on February 26, 2013, that she had tested negative for all three diseases. (Dkt. 16-1 at ¶ 49). Plaintiff underwent additional testing, although she does not remember when, which also returned negative results. (Dkt. 16-8 at 16-17).

Plaintiff maintains she "sustained great emotional harm and injury regarding her fear of having contracted HIV and/or Hepatitis C, which will continue into the future." (Dkt. 1 at ¶ 20).

## DISCUSSION

### I.    Standard of Review for Motion for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party.  *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).   Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec.*, 475 U.S. at 586-87).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

### II.    Defendant's Statement of Material Facts Is Deemed Admitted

In support of its summary judgment motion, Defendant submitted a Statement of Material Facts Not in Dispute (Dkt. 16-1) ("Defendant's Statement"), an affirmation by its attorney to which Defendant attached exhibits, declarations, and deposition transcripts supporting its statement of material facts (Dkt. 16-2 to 16-8), and a memorandum of law

(Dkt. 16-9). Plaintiff's response in opposition consisted solely of a memorandum of law. (Dkt. 20).

Plaintiff failed to submit a response to Defendant's Statement that complies with Local Rule of Civil Procedure 56(a)(2). Local Rule 56(a)(2) requires a party opposing a motion for summary judgment to submit "a response to each numbered paragraph in the moving party's statement, in correspondingly numbered paragraphs . . . containing a short and concise statement of additional material facts as to which it is contended there exists a genuine issue to be tried." Local Rule 56(a)(2) further provides that "[e]ach numbered paragraph in the moving party's statement of material facts may be deemed admitted for purposes of the motion unless it is specifically controverted by a correspondingly numbered paragraph in the opposing statement." *Id.*; *see also* Fed. R. Civ. P. 56(e)(2) (when a party fails to properly support an assertion of fact or fails to address another party's assertion of fact, the court may consider the fact undisputed for purposes of the motion). Plaintiff's opposition fails to comply with these requirements and therefore affords the Court discretion to deem Defendant's Statement admitted for the purposes of the motion for summary judgment.

The Court has discretion to excuse a party's failure to file a statement of facts, and the Second Circuit Court of Appeals has indicated that a district court should not deem unopposed facts to be admitted when those facts are unsupported by the record. *See Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73-74 (2d Cir. 2001). However, in this case, each factual assertion within Defendant's Statement is supported by a citation to the exhibits, declarations, and sworn testimony attached to its attorney's affirmation, and

those documents are sufficient to prove those factual assertions.[2] (Dkt. 16-1 to 16-8). Accordingly, the Court deems the factual allegations set forth in Defendant's Statement admitted. *See* Fed. R. Civ. P. 56(e)(2); *N.Y. State Teamsters Conference Pension & Ret. Fund v. Express Servs., Inc.*, 426 F.3d 640, 648-49 (2d Cir. 2005); *Gubitosi v. Kapica*, 154 F.3d 30, 31 n. 1 (2d Cir. 1998).

## III.  Plaintiff's Claims

Although the Court deems that Defendant's factual assertions are admitted, the conclusions Defendant draws from those assertions are not. *See, e.g.*, *Giannullo v. City of N.Y.*, 322 F.3d 139, 140 (2d Cir. 2003) ("The local rule does not absolve the party seeking summary judgment of the burden of showing that it is entitled to judgment as a matter of law . . . ."). Thus, the Court now examines whether the record evidence warrants summary judgment in Defendant's favor.

### A.  The Parties' Positions

Defendant asserts that summary judgment is warranted because Plaintiff cannot demonstrate negligent infliction of emotional distress under New York law as required to maintain her claim pursuant to the FTCA. Defendant specifically contends Plaintiff

---

[2]     For a party to use a declaration to support a motion for summary judgment, the declaration "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). The Court finds the declarations satisfy the standard set out in the Federal Rules of Civil Procedure. Additionally, Plaintiff did not present directly conflicting evidence to these declarations, as required by Local Rule 56(a)(2), or move to strike them. *See, e.g.*, *Rus, Inc. v. Bay Indus., Inc.*, 322 F. Supp. 2d 302, 307 (S.D.N.Y. 2003); *Degelman Indus., Ltd. V. Pro-Tech Welding and Fabrication, Inc.*, 2011 WL 6754053 at *2 (W.D.N.Y. May 31, 2011); *see* Fed R. Civ. P. 56(e). The Court therefore finds the declarations are sufficient to prove the related factual assertions in Defendant's Statement.

cannot show that Defendant breached its duty of care to Plaintiff or that Plaintiff suffered an injury recognized under law. (Dkt. 16-9 at 15). Defendant further argues that the evidence conclusively shows Plaintiff was not negligently exposed to infection while under the care of the Buffalo VAMC. *Id.* It also argues that Plaintiff has failed to prove injury because she has not demonstrated that she was infected with bloodborne pathogens or exposed to them. *Id.* at 15-16.

Plaintiff opposes the summary judgment motion, contending that the probable presence of a bloodborne pathogen and its plausible transmission are sufficient to prove both a breach of duty by Defendant and injury. (Dkt. 20 at 1). Additionally, Plaintiff asserts that even if actual exposure is required by law, special circumstances exist here that allow her claim to go forward. *Id.* at 2.

In reply, Defendant argues that even if the Court finds that probable exposure is the proper standard, summary judgment is still warranted because the record evidence establishes that Plaintiff was not exposed to any bloodborne pathogens by Defendant. (Dkt. 21 at 2). Defendant also contends that Plaintiff's special circumstance arguments are without merit. (Dkt. 21 at 4-6).

**B.** **Analysis**

The FTCA establishes the liability of the United States "for injury . . . or personal injury . . . caused by the negligent or wrongful act or omission of any employee of the government while acting within the scope of his office or employment . . . ." 28 U.S.C. § 1346(b)(1). Under the FTCA, the law of the place where the act or omission occurred applies. *Id.*; *see also Guttridge v. United States*, 927 F.2d 730, 732 (2d Cir. 1991)

- 10 -

("[T]he FTCA defines the liability of the United States in terms of that of a private individual under the law of the state where the alleged tort occurred . . . ."). Here, the alleged negligence occurred in Buffalo, New York, (Dkt. 1 at ¶¶ 11-21), so New York negligence law applies.

New York courts recognize an action for negligent infliction of emotional distress, defining it as "injuries sustained although precipitated by a negligently induced mental trauma without physical impact." *Tobin v. Grossman*, 24 N.Y.2d 609, 613 (1969); *see also Battalla v. New York*, 10 N.Y.2d 237, 238-42 (1961). To prove a claim for negligent infliction of emotional distress, a plaintiff must show that the defendant owed her a duty, the defendant breached that duty, and the breach proximately caused emotional harm to the plaintiff. *Martinez v. Long Island Jewish Hillside Med. Ctr.*, 70 N.Y.2d 697, 699 (1987); *Brown v. N.Y.C. Health and Hosps. Corp.*, 225 A.D.2d 36, 44 (2d Dep't 1996). Here, it is undisputed that Defendant had a duty to Plaintiff to prevent the transmission of an infectious disease. Accordingly, the issues before the Court are whether a reasonable trier of fact could conclude Defendant breached its duty to Plaintiff and whether Plaintiff has produced sufficient evidence of injury. Those issues are intertwined under New York law, as further discussed below.

### 1.    Exposure to Bloodborne Pathogens

In New York, demonstrating physical harm is not required when asserting a claim of negligent infliction of emotional distress if the injury is "a direct, rather than a consequential, result of the breach," and possesses "some guarantee of genuineness." *Ornstein v. N.Y.C. Health and Hosps. Corp.*, 10 N.Y.3d 1, 6 (2008) (quoting *Kennedy v.*

*McKesson Co.*, 58 N.Y.2d 500, 504 (1983)); *see also Johnson v. New York*, 37 N.Y.2d 378, 382 (1975). New York courts have recognized that a negligent infliction of emotional distress claim involving fear of HIV can be established in three ways: proof of infection resulting from the exposure; proof that the needle or other implement was infected prior to its use on the plaintiff ("actual exposure"); or proof of the probable presence of infection on the implement ("probable exposure").[3] *See Ornstein*, 10 N.Y. at 6; *Montalbano v. Tri-Mac Enters. of Port Jefferson, Inc.*, 236 A.D.2d 374, 375 (2d Dep't 1997).

Proof of an infection is not necessary; a plaintiff who has not tested positive for an infection may be able to demonstrate the genuineness of the harm by offering proof of exposure. *See, e.g., Ornstein*, 10 N.Y.3d at 6 (holding the plaintiff had a claim for negligent infliction of emotional distress after being stuck with a needle filled with blood that was left in the bed of a patient with acquired immune deficiency syndrome (AIDS)). In this case, Plaintiff concedes that she was not infected with HIV or any other bloodborne pathogens from the insulin pen injections she received while under the care of the Buffalo VAMC. (Dkt. 16-1 at ¶¶ 49-50). The Court must therefore turn to the requirements of the two other possible standards: actual exposure and probable exposure.

---

[3]     This Court's research did not find that New York courts have applied the infection, actual exposure, or probable exposure standards outside of the HIV context. While the standards may very well be applicable to cases involving hepatitis B or C, the Court does not need to reach that issue because Plaintiff has alleged her mental distress stemmed in part from her fear of an HIV infection. (Dkt. 1 at ¶ 19).

a. **Actual Exposure**

Under New York law, demonstrating actual exposure requires offering proof of two things: (1) that because of the defendant's negligence, the plaintiff was exposed to the disease through "a scientifically accepted method of transmission of the virus," and (2) "that the source of the allegedly transmitted blood or fluid was in fact HIV positive." *Ornstein*, 10 N.Y.3d at 6 (quoting *Bishop v. Mount Sinai Med. Ctr.*, 247 A.D.2d 329, 331 (1st Dep't 1998)); *see also Fosby v. Albany Mem'l Hosp.*, 252 A.D.2d 606, 607 (3d Dep't 1998). In *Brown v. N.Y.C. Health and Hosps. Corp.*, the court held that the defendants were not entitled to summary judgment because there was evidence of actual exposure. 225 A.D.2d at 48. The plaintiff in *Brown*, a nurse, was changing the diaper of an infant infected with HIV when a needle left in the crib penetrated her thumb down to the bone. *Id.* at 37-38. The needle was thrown away before anyone tested it for the virus. *Id.* at 48. The court found that "[t]he fact that the needle was discarded before it could be tested for the presence of HIV does not bar the plaintiff's claim, as there was other evidence from which a jury could potentially conclude that the needle was contaminated." *Id.* at 48.

In contrast, based on the record before this Court, no reasonable trier of fact could find actual exposure here. To prove actual exposure, Plaintiff must first demonstrate that because of Defendant's negligence, Plaintiff was exposed to the disease through "a scientifically accepted method of transmission of the virus." *Ornstein*, 10 N.Y. at 6. While the evidence shows that using insulin pens on more than one patient can potentially expose patients to bloodborne diseases, (Dkt. 1-4 at 8), it does not demonstrate that eventuality happened here. To the contrary, the declarations of all the

- 13 -

LPNs that used an insulin pen on Plaintiff state that each of them "always used the patient's individually labeled insulin pen that was stored in the patient's medication drawer" and acted "in accordance with the hospital's nursing practice procedures." (Dkt. 16-4 at ¶ 4-5; Dkt. 16-5 at ¶ 4-5; Dkt. 16-6 at ¶ 4-5). The evidence also shows the nursing practice procedures of the Buffalo VAMC instructed nurses to label the insulin pens with the patient's name directly after removing a new pen from the refrigerator and then place the pen in the patient's medication drawer. (Dkt. 1-4 at 15). The procedures also stated "[t]he pens are NOT to be shared." (*Id.*). Of the 37 nurses OIG questioned during its investigation, 31 of them reported they labeled the insulin pens when they removed them from the refrigerator or that the pens they used already had labels with the patient's name. (*Id.* at 17).

The evidence demonstrates that only Plaintiff's labeled pen was used on Plaintiff while under the care of the Buffalo VAMC. According to the record, the pens came directly from the storage refrigerator before being immediately labeled, and the LPNs that injected insulin into Plaintiff only used labeled pens on the patients for whom they were labeled. Therefore, Plaintiff was the first and only patient to receive an injection from the insulin pen used on her during her stay at the Buffalo VAMC. Plaintiff did not dispute this account in her response to Defendant's motion for summary judgment. (*See* Dkt. 20). Accordingly, the parties presented no evidence from which a trier of fact could conclude that Plaintiff was exposed to a bloodborne pathogen via a scientifically accepted method of transmission.

The evidence of record also cannot meet the second prong of the actual exposure analysis. The second prong requires the source of the allegedly transmitted fluid to be positive for infection. *Ornstein*, 10 N.Y.3d at 6. Because the evidence shows the insulin pen at issue was only used on Plaintiff in the manner discussed above, and Plaintiff was not infected with any bloodborne pathogens, the source of any fluid or other material on the pen cannot have been positive for infection. Therefore, the record does not support a finding of actual exposure.

### b.  Probable Exposure

Some New York courts have found that the probable presence, as opposed to the actual presence, of HIV when the alleged transmission occurred may be sufficient to support a negligent infliction of emotional distress claim. *See, e.g., Montalbano*, 236 A.D.2d at 375 (2d Dep't 1997) (granting the defendant's motion for summary judgment because plaintiff failed to demonstrate actual exposure to HIV or that there was a logical probability that the blood he was exposed to was infected with the virus); *Castro v. N.Y. Life Ins.*, 588 N.Y.S.2d 695, 698 (N.Y. Sup. Ct., N.Y. Cty., July 29, 1991) (holding the plaintiff's claim for negligent infliction of emotional distress should not be dismissed and that summary judgment should not be granted for the defendant because "any reasonable person exposed to [information about the dangers of AIDS] who is stuck by a used . . . syringe from which blood was apparently drawn could develop a fear of contracting AIDS"). However, other New York courts have declined to take this view. *See Bishop v. Mount Sinai Med. Ctr.*, 247 A.D.2d 329, 332 (1st Dep't 1998) ("While we acknowledge that some courts have adopted a lesser standard in requiring only proof of a possible

channel of transmission, without any proof of actual exposure, we decline to adopt this view. We agree . . . that '[r]equiring proof of actual exposure . . . will . . . insure that there is a genuine basis for the plaintiff's fear of developing the disease, that the fear is not based on public misconceptions about the disease, and that such claims are treated consistently.") (quoting *Brown*, 225 A.D.2d at 45) (citations omitted). New York courts hold that if a plaintiff shows no proof of acquiring HIV or exposure to it, "recovery for emotional distress will be denied as overly speculative and remote." *See Kaufman v. Physical Measurements*, 207 A.D.2d 595, 596 (3d Dep't 1994) (holding there was no claim for negligent infliction of emotional distress for a plaintiff who tested negative for HIV after being negligently pricked by the defendant's needle because the other individual from whom the defendant drew blood was HIV negative); *see also Bishop*, 247 A.D.2d at 331-32 (granting the defendant's motion for summary judgment because there was no evidence of what the object that cut the plaintiff was or where it came from). While New York's highest court unquestionably recognizes the actual exposure requirement, it has not yet addressed whether only the probable presence of HIV is sufficient. *See Ornstein*, 10 N.Y.3d at 6.

In this case, even if the probable exposure standard applies, the evidence does not support a finding that it was met. Probable exposure requires the plaintiff to demonstrate a logical probability that she was exposed to a pathogen. *Montalbano*, 236 A.D.2d at 375. As discussed above, the evidence presented to the court does not permit even a logical possibility of exposure, let alone a probability of one. Instead, the evidence

shows that the insulin pen used on Plaintiff was not used on any other patient. Therefore, the evidence does not demonstrate probable exposure here.

The case at hand differs from the facts in *Brown*. Like Defendant here, the defendant in *Brown* was unable to produce the implement of alleged exposure (i.e. the needle or pen). However, in *Brown*, the plaintiff presented other evidence that could lead a jury to find the needle was infected: namely, that the needle that penetrated the plaintiff was in the crib of an HIV-infected infant. 225 A.D.2d at 37-38, 48. Here, in contrast, Defendant presented evidence eliminating the possibility that Plaintiff was exposed, and Plaintiff failed to refute it. Consequently, Plaintiff failed to demonstrate a logical probability that she was exposed to a pathogen.

After reviewing all the record evidence and resolving any ambiguities and reasonable inferences in Plaintiff's favor, the Court finds that Plaintiff has failed to demonstrate facts from which a reasonable trier of fact could find actual exposure or probable exposure.

## 2.  **Special Circumstances**

The Court next considers whether any special circumstances exist that would allow Plaintiff to circumvent the actual and probable exposure standards and maintain a viable claim for negligent infliction of emotional distress. Under New York law, if the plaintiff cannot demonstrate an HIV infection or exposure to the virus, she can still recover for negligent infliction of emotional distress if she can show the presence of other special circumstances that serve "as a guarantee that the claim is not spurious." *Fosby*, 252 A.D.2d at 608 (quoting *Johnson v. New York*, 37 N.Y.2d 378, 382 (1975)).

In *Fosby*, the court held there could be a special circumstance if the defendant unreasonably withholds information. *Id.* at 608. The *Fosby* plaintiff was a patient at a hospital who pricked herself on a needle while reaching for a blanket. *Id.* at 607. The defendant refused to provide the plaintiff with an incident report that detailed the previous use of the needle, instead advising her to seek testing for HIV. *Id.* The court found this withholding of information was unreasonable and could be a special circumstance, and that possibility warranted the denial of summary judgment. *Id.* at 608; *see also Salazar v. Advanced Urology, P.C.*, 2008 N.Y. Slip Op. 33417(U) at \*15-16 (N.Y. Sup. Ct., N.Y. Cty., Dec. 15, 2008) (finding special circumstances could exist if defendants either withheld results from a needle's infectious disease test or failed to send the needle for testing after agreeing to promptly do so); *Harris v. New York*, 187 Misc. 2d 512, 517 (N.Y. Ct. Cl. 2001) (holding that to resolve whether special circumstances exist, the parties "must establish . . . all of the known facts about the location, condition and likely source of the needle and/*or* specific circumstances under which [the defendant] elected to dispose of the needle") (emphasis added).

In *Keller v. Medtronic Sofamor Danek, USA, Inc.*, the court found special circumstances existed. 2009 N.Y. Slip Op. 30859(U), at \*24 (N.Y. Sup. Ct. Richmond Cty., April 14, 2009). There, the defendants improperly obtained tissue and bones from human bodies at various funeral homes without screening them for infectious diseases or viability. *Id.* at \*2. The plaintiff had a bone allograft done using tissue harvested by the defendants, was later notified that the tissue was improperly obtained, and subsequently underwent testing for various infectious diseases. *Id.* at \*4. The court held that the

plaintiff's reliance on the defendants' representations that the tissue was screened prior to its insertion and determined to be disease free constituted a special circumstance. *Id.* at 24.

The Court finds no special circumstances exist here. Unlike in *Fosby*, the record in this case shows no indication that Defendant unreasonably withheld information. While the insulin pen was not available in this case, the evidence does not reflect any request by Plaintiff to test the insulin pen or for Defendant to produce it. Additionally, the evidence shows no proof that a Buffalo VAMC employee concealed or intentionally destroyed the insulin pen used on Plaintiff. Therefore, Plaintiff has not demonstrated any special circumstance here due to an unreasonable withholding of information.

Moreover, the matter at hand is also distinguishable from the special circumstance in *Keller*, where the defendant admitted to the plaintiff that the tissue placed inside the *plaintiff herself* was improperly obtained. *Keller*, 2009 N.Y. Slip Op. 30859(U), at *24. Here, Defendant has done the opposite: it has produced evidence that its employees properly administered the insulin injections to Plaintiff and that the insulin pen was free of bloodborne pathogens. (Dkt. 16-4 at ¶ 4-5; Dkt. 16-5 at ¶ 4-5; Dkt. 16-6 at ¶ 4-5).

Based on the foregoing, Plaintiff has not demonstrated that any special circumstances exist, and consequently the actual and probable exposure standards necessary for a negligent infliction of emotional distress claim cannot be circumvented. Accordingly, Plaintiff cannot support a claim for negligent infliction of emotional distress under the FTCA, and summary judgment in favor of Defendant is appropriate.

## **CONCLUSION**

For the foregoing reasons, Defendant's motion for summary judgment (Dkt. 16) is granted, and Plaintiff's complaint is dismissed. The Clerk of Court is directed to enter judgment in favor of Defendant and close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

DATED:     September 21, 2018
           Rochester, New York